## UNITED STATES v. WHITE.
### No. 8265.

Circuit Court of Appeals, Third Circuit.
Argued Feb. 15, 1943.
Decided May 24, 1943.

Rehearing Denied June 18, 1943.

Robert J. Fitzsimmons, of New York City, for appellant.

Allen A. Dobey, Sp. Asst. to Atty. Gen., (Edward R. Kenney, Sp. Atty., and Tom C. Clark, Chief, War Frauds Unit, both of Washington, D. C., and Frederick V. Follmer, U. S. Atty., of Scranton, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

The facts in the case at bar are not in dispute. On December 28, 1942, a subpoena duces tecum was issued by the District Court of the United States for the Middle District of Pennsylvania addressed to a labor union, "Local No. 542, International Union of Operating Engineers", requiring it to produce on January 11, 1943, certain books and records before a grand jury of the United States District Court for the Middle District of Pennsylvania sitting at Harrisburg. The books and records called for were books and records belonging to the union.[1] On December 30, 1942, the subpoena was served on the president of the union.

The grand jury was engaged in an investigation of alleged irregularities occurring in connection with the construction of the Mechanicsburg Naval Supply Depot. On January 11, 1943, the defendant, Jasper White, an assistant supervisor or business manager of the union, came before the grand jury and stated that he appeared in response to the subpoena and that he had brought with him the books and records specified. He then read a statement which had been prepared for him by counsel and refused to turn over the books and records, claiming " * * * on behalf of Local Union 542, International Union of Operating Engineers, and on behalf of myself, in my capacity as an Assistant Supervisor thereof, and individually * * *" the immunity guaranteed by the Fourth and Fifth Amendments to the Constitution of the United States.

The judge assigned to preside in the District Court of the United States for the Middle District of Pennsylvania at Harrisburg was not available on January 11, 1943. The defendant was requested to return to the Federal Building on January 13, 1943, at which time the judge was expected to be present. On January 13, 1943, the grand jury filed a presentment charging the defendant with being a contumacious witness and requesting his punishment. On January 14, 1943, the judge held a hearing in respect to the presentment and heard the arguments of counsel. The defendant was in the courtroom and had the books and records with him. So far as the record shows, the District Judge did not examine the books and records called for by the subpoena. He delivered an oral opinion, proceeding on the theory that a labor union cannot avail itself of the privilege against self incrimination[2] and made it clear that if the defendant persisted in his refusal to produce the books and records before the grand jury he would be found guilty of contempt of court. The judge then called the defendant before the bar of the court and directed him to produce the books and records before the grand jury. The defendant again declined to produce the books and records and his counsel read a statement wherein the defendant claimed " * * * on behalf of Local No. 542, its officers and members, and on my own behalf, the immunity granted under the Fourth and Fifth Amendments of the Constitution of the United States".

The question before the Court is: Can the defendant refuse to produce the records of the union on the ground that they will incriminate him? It has been established law since the decision in Boyd v. United States, 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746, that the right of a witness to refuse to produce books and papers upon the ground that their production would incriminate him must be based upon the fact that the books and papers in respect to which the privilege is asserted are the witness's own books and

---

[1] There were eleven items specified in the subpœna. The first item specified was a copy of the constitution of the Local. The last was its minutes. Certain of the items were obviously germane to the inquiry which the grand jury was conducting.

[2] Citing United States v. Greater New York Live Poultry Chamber of Commerce, D.C., S.D.N.Y.1929, 34 F.2d 967, 968, affirmed 2 Cir., 1931, 47 F.2d 156 (but instant question not involved), certiorari denied 1931, 283 U.S. 837, 51 S. Ct. 486, 75 L.Ed. 1448; United States v. B. Goedde & Co., D.C.E.D.Ill.1941, 40 F. Supp. 523, 534. See, also, United States, v. Lumber Products Ass'n, D.C.N.D.Cal. 1942, 42 F.Supp. 910; In re Local Union No. 550, United Brotherhood of Carpenters and Joiners of America, D.C.N. D.Cal.1940, 33 F.Supp. 544.

papers. It is clear that the books and records here are not the private books and records of the defendant alone and that they do not in fact belong to him only. They are the books and records of the union. Nor has the defendant asserted any facts which would bring him by analogy within the rule stated by Wigmore in respect to officers of corporations,[3] that " * * *, for any documents therein [corporate records] that concern only the 'private or personal' affairs of the officer, the Court may direct their 'withdrawal from scrutiny'." citing Wilson v. United States, 1911, 221 U.S. 361, at page 378, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D. 558.

■ However, that does not dispose of the case. We think that if the defendant was a member of the union he could avail himself of the privilege against self incrimination if the documents tended to incriminate him. The appellee claims there is an analogy between corporations and labor unions. If this were so, neither the union nor White as its officer could claim the privilege. Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 1911, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558. However, we do not find the analogy persuasive. The reasons why a corporation cannot avail itself of the privilege are stated in Wilson v. United States and Hale v. Henkel, supra. A corporation is a creature of the state legislature, enjoying privileges and franchises subject to the laws of the state and limitations of its charter. When the state grants incorporation, it reserves a visitatorial power to exact compliance with these regulations. Implicit in this situation is the requirement that the corporation maintain books and records to reflect its transactions and that it yield these documents to inspection when its affairs are questioned by the state.

■ The present day status of Local 542 is quite different. It does not derive its existence from any charter granted by the state. Its books and records are not of a public or even semi-public character. They are the private documents of the union members who, had they so chosen, did not need to keep records in the first instance. There is nothing, in the absence of legislation, giving the state a reserved visitatorial power over the union and its affairs. For the purposes of the privilege against self incrimination the members of the union are in the same position as ordinary individuals who maintain books and records of their transactions. We think if the defendant was a member of the union and the contents of the books and records subpœnaed would, upon examination by the trial judge, have tended to incriminate him, that his claim to privilege should have been allowed.

■ However, the record does not answer the basic question of whether White was a member of the union. It is stated that he was the business manager or assistant supervisor of the union. Whether to hold this position he had to be such a member the Court does not know. The view taken by the court below obviated the necessity for such an inquiry and neither White nor the government offered any evidence or testimony on this issue. Such evidence is in our view highly relevant. The case is, therefore, remanded to the District Court to determine whether White was a member of Local 542. If he was, then the books should be examined by the trial judge to determine whether they tend to incriminate White as an individual. See Brown v. United States, 1928, 276 U.S. 134, 144, 145, 48 S.Ct. 288, 72 L.Ed. 500. If they do, the claim of privilege should be sustained.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

BIGGS, Circuit Judge (dissenting).

I must record my dissent from the opinion expressed by the majority.

Two questions must be answered in the case at bar: (1) May the defendant refuse to produce the records of the union on the ground that they will incriminate him; and (2) May he refuse on the ground that their production by him will incriminate the union or its members?

The defendant read to the grand jury a statement prepared by his attorney which set out the facts on which he based his claim of privilege under the Fifth Amendment. After the presentment of the grand jury to the court but before the court sentenced the defendant, his attorney read a statement to the District Judge which again stated his client's grounds for claiming the privilege. These statements need

---

[3] 8 Wigmore on Evidence (3rd Ed. Supp.1943) § 2259b.

not be repeated here. They are set out in the majority opinion.

At no time did the defendant assert or allege that he himself was a member of Local No. 542. He did not claim that the books and records of the union contained disclosures so related to his personal acts as to make them virtually his own.[1] He did not assert any facts which by analogy would bring him within the rule stated by Wigmore in respect to officers of corporations.[2] The privilege against self-incrimination is personal. It may not be asserted by one individual on behalf of another.[3] No fact appears in the record before us from which the court below would have been justified in sustaining the claim of privilege. So far as the record shows the defendant is in the position of any individual who has in his possession books and records belonging to others and is called upon to produce them before a grand jury. It is axiomatic that unless a witness claims some measure of ownership in records he is not entitled to claim the privilege in respect to them. The defendant may or may not be a member of Local No. 542 but his status in this respect is immaterial. He has chosen to stand on his carefully prepared written statements.[4] He has had his day in court and I think

that he, the District Court, and ourselves are bound upon the record. It follows that the answers to the two questions set out in the second paragraph of this opinion must be in the negative.

If, however, the defendant had asserted in the court below that he was a member of the union, I would still be of the opinion that the judgment of conviction should be affirmed. Labor unions are not partnerships.[5] A member of a partnership may maintain the privilege against self-incrimination in respect to the production of the records of the partnership. The right to choose one's fellow members, the delectus personarum, which is regarded as one of the most important and indispensable characteristics of a partnership,[6] is not available to the members of a labor union. Generally a worker may be admitted to a labor union without the consent of all of the members. See People v. Herbert, 162 Misc. 817, 295 N.Y.S. 251. And a member may not be expelled from the union so long as he meets its membership requirements. Spayd v. Ringing Rock Lodge No. 665, 270 Pa. 67, 113 A. 70, 14 A.L.R. 1443; Thompson v. Grand International Brotherhood of Locomotive Engineers, 41 Tex.Civ. App. 176, 91 S.W. 834; Abdon v. Wallace, 95 Ind.App. 604, 165 N.E. 68; Sweet-

---

[1] It is contended that the District Judge should have inspected the books and records to see if their contents would tend to incriminate the defendant. This contention cannot be sustained. It was the defendant's duty to produce the books in order that the court might by an inspection of them satisfy itself whether they contained matters which might tend to incriminate. As was stated in Brown v. United States, 276 U.S. 134, 144, 48 S.Ct. 288, 290, 72 L.Ed. 500, "If [the witness] declined to [produce the records covered by the subpœna], that alone would constitute a failure to show reasonable ground for his refusal to comply with the requirements of the subpœna." In the cited case Mr. Justice Sutherland quoted with approval the decision of the Court of Appeals of Kentucky in Commonwealth v. Southern Express Co., 160 Ky. 1, 3, 169 S.W. 517, L.R.A.1915B, 913, Ann.Cas.1916A, 378, where it was said, " * * * the individual citizen may not resolve himself into a court and himself determine and assert the criminating nature of the contents of books and papers required to be produced."

[2] "Nor can * * * [the witness] refuse to produce on the ground that some parts of the corporate records would

criminate himself even if such parts were made by himself; though, for any documents therein that concern only the 'private or personal' affairs of the officer, the Court may direct their 'withdrawal from scrutiny'.", citing Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221 U.S. 361, 31 S. Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; and other authorities. Wigmore on Evidence, Third Edition, Volume 8, Section 2259b, 1943, Pocket Supplement p. 23.

[3] Wigmore, supra, Section 2196.

[4] Such statements allege only that he is an officer of the union. Since the constitution and by-laws of the union have not been produced, this court has no way of knowing whether or not an officer is ipso facto a member of the union.

[5] I agree with the majority that the analogy between corporations and labor unions is not persuasive. As the majority state, a power of visitation on the part of the state is included with the privileges granted by the charter and the immunity from personal liability which is one of these privileges.

[6] Mechem, Elements of Partnership, Sec. 5.

28

man v. Barrows, 263 Mass. 349, 161 N.E. 272, 62 A.L.R. 311. Unlike the members of a partnership, the members of a union do not act as agents for each other or assume responsibility for the conduct of the other members. Consequently in fact there can be no claim of personal ownership or privity by the members of a union in the records of the organization. The books and records of a labor union are no more the personal property of the individual members than are the funds in a union treasury the private and personal funds of the members.[7]

Labor unions are unincorporated associations composed of individuals, but they are also organizations which today operate as entities. Their members do not function as individuals in relation to the public. This fact has been recognized frequently by Congress.[8] The law should not extend to the records of such bodies, or to those of any other unincorporated association which functions as an entity, a privilege hitherto zealously restricted to an individual who claims the privilege expressly on his own behalf. If this conclusion is correct, membership in a union can confer no right upon an individual to claim the privilege guaranteed by the Fifth Amendment on the ground that the production of the books and records of the union will incriminate him or the organization.

It follows that even if it be assumed that the defendant is a member of Local 542, he cannot meet the test imposed by the Supreme Court in Boyd v. United States, 116 U.S. 616, 633, 6 S.Ct. 524, 528, 29 L.Ed. 746. In the cited case Mr. Justice Bradley made use of the definitive phrase "a man's private books and papers". The Supreme Court held that the privilege against self-incrimination guaranteed by the Fifth Amendment was applicable only to a man's personal records. The Boyd case is the governing law today on this point. It is unrealistic to say that by reason of membership in the union, the defendant can meet the test laid down by the Supreme Court in the Boyd case.

Accordingly I conclude that the judgment of conviction should be affirmed.[9]

[7] It is interesting to observe that in at least two cases it has been held that if an officer of a union converts the funds of the union to his own use, he may be found guilty of larceny. See People v. Herbert, supra, and People ex rel. Murphy v. Crane, 80 App.Div. 202, 80 N.Y.S. 408. It is true that in the cited cases, the defendants asserted the supposed analogy between unions and partnerships and that the Supreme Court of New York in arriving at the conclusion which I have stated, had before it a statute, Section 528 of the Penal Code of New York of 1881, which provided that any person, who having property in his possession as an officer of any person, association, or corporation, appropriated it to his own use, could be found guilty of larceny. None the less the Court based its conclusion upon the fact that the defendants in the two cases cited were not possessed of such an interest in the moneys of their union as to enable them to plead ownership. See also Starr v. Chase, [1924] 4 D.L.R. 55, [1924] S.C.R. 495—Can.

[8] For example the right to collective bargaining has been established by law. See Sections 7, 8 of the National Labor Relations Act, Act of July 5, 1935, c. 372, 49 Stat. 452, 29 U.S.C.A. §§ 157, 158. Labor unions likewise are given a special status in respect to the anti-trust laws of the United States. Section 20 of the Act of October 15, 1914, c. 323, and Sec. 6 (The Clayton Act) 38 Stat. 731, 29 U.S.C.A. § 52, 15 U.S.C.A. § 17. The Norris-La Guardia Act protects labor unions from injunctions for the purposes specified in the Act. See Section 4 of the Act of March 23, 1932, c. 90, 47 Stat. 70, 29 U.S.C.A. § 104.

In this connection see what Mr. Chief Justice Taft stated in the First Coronado Case, United Mine Workers v. Coronado Coal Co., 259 U.S. 344, at page 391, 42 S.Ct. 570, at page 576, 66 L.Ed. 975, 27 A.L.R. 762.

[9] Compare the following four decisions of lower federal courts: United States v. B. Goedde & Co., D.C., 40 F.Supp. 523, 534; United States v. Greater New York L. P. Chamber of Commerce, D.C., 34 F.2d 967, 968, affirmed 2 Cir., 47 F.2d 156, certiorari denied 283 U.S. 837, 51 S. Ct. 486, 75 L.Ed. 1448; United States v. Lumber Products Ass'n, D.C., 42 F.Supp. 910; In re Local Union No. 550, United Brotherhood of Carpenters and Joiners of America, D.C., 33 F.Supp. 544.