# Hockfield, Appellants, *v.* Woloderker Building and Loan Association.

*Building and loan associations—By-laws—Withdrawal—Value of stock—Act of April 10, 1879, P. L. 16, section 2.*

Where the by-laws of a building association fail to prescribe the proportions of profits or the rates of interest to which withdrawing shareholders are entitled, they can demand, in addition to the amount paid by them, interest at a lawful rate, less fines and proper charges.

Under the Act of April 10, 1879, P. L. 16, requiring that stockholders withdrawing voluntarily shall receive such proportion of the profits of the association, or such rate of interest as may be prescribed by the by-laws, a by-law providing that such shareholder shall be entitled to "interest or such proportion of the profits as the board of directors shall determine, less the expenses on each share," is illegal.

The act makes it mandatory for the association to fix the proportion of the profits or the rate of interest by the by-law, and it is not a compliance with the terms of the statute to delegate to the directors of the association the right to fix the proportion of the profits or the amount of interest, which withdrawing stockholders shall receive.

Argued December 9, 1924. Appeal, No. 274, Oct. T., 1924, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1923, No. 6955, in the case of Benjamin and Harry Hockfield v. Woloderker Building and Loan Association. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Bill in equity to compel payment of withdrawal value of stock of building association. Before McCULLEN, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the bill. Plaintiff appealed.

*Error assigned* was, among others, the decree of the court.

*Joseph A. Allen,* for appellant, cited: Arbour v. Pittsburgh Produce Trade Association, 44 Pa. Superior Ct. 240; Lynn v. Freemansburg B. & L. Assn., 117 Pa. 1; Endlich on Building Assn. at section 271; Sandford v. Railroad Company, 24 Pa. 378; Spayd v. Ringing Rock Lodge, 270 Pa. 67; Pittsburgh, etc., Ry. Co. v. Lyon, 123 Pa. 140.

*Bertram K. Wolfe,* and with him *Aarons, Weinstein and Goldman,* for appellee, cited: Lepore v. Building & Loan Association, 5 Pa. Superior Ct. 276; Eaton v. Eastern Building and Loan Association, 7 Pa. Dist. 440; Myers v. Alta Friendly Society, 29 Pa. Superior Ct. 492.

OPINION BY GAWTHROP, J., April 28, 1925:

Plaintiffs filed a bill in equity, in which they alleged that in January, 1917, they subscribed for fifty-seven shares of stock in the twentieth series of the defendant building and loan association. Immediately after their subscription they borrowed from the defendant $11,300, and assigned their stock as additional security for the loan, which was secured by a mortgage on certain real estate owned by them. From January, 1917, to March, 1923, they paid the defendant interest and premiums on the loan and $1 per month per share on account of the stock, making a total payment of $4,275. In March, 1923, they notified the defendant that they desired to pay off the loan of $11,300 on the next meeting night of the defendant, to wit, April 10, 1923, and desired to have their stock cancelled or withdrawn, and the withdrawal value thereof applied on account of the principal of the loan. Whereupon the defendant, by its secretary, informed plaintiffs that the withdrawal value of the stock was $4,367.91, which was made up of the sum of $4,275 paid in by plaintiffs on account of the maturity value of the stock and an allowance of $92.91 as the share of profits payable to them in accordance with defendant's by-laws. Section 3 of article III of defendant's by-laws,

in force at the time plaintiffs subscribed for the stock and became members of the defendant association, provided that "stockholders desiring to withdraw from the association shall, after having given thirty days' notice of their intention to do so, receive from the treasurer the amount of monthly dues paid in by them, and, after the expiration of the first year, in addition, interest, or such proportion of the profits as the board of directors shall determine, less the losses and expenses on each share." Under the authority thus conferred, the defendant's board of directors adopted a resolution, in force when, and ever since, plaintiffs became members of the defendant association, providing that, "any stockholder withdrawing from the Woloderker Building and Loan Association shall thereupon be entitled to receive after the expiration of two years of the series to which the withdrawing stock belongs, ten (10%) per cent, or one-tenth (1-10) of the profits of same series according to the last annual report." By the auditor's report for the fiscal year of the defendant association ending July 1, 1922 (being the last annual report in existence at the time of plaintiffs' notice of withdrawal) it appeared that each of the shares of stock of the series to which plaintiffs' stock belonged had made to that time a net gain or profit of sixteen dollars and thirty-three and a half cents ($16.33½), independent of participation in undivided profits of the association amounting to three thousand, two hundred and fourteen dollars and forty-seven and a half cents ($3,214.47½); and that the fifty-seven shares held by plaintiffs had made a net gain of nine hundred thirty-one dollars and nine and a half cents ($931.09½), plus a proportionate share of the undivided profits. The bill averred that the resolution of the board of directors passed pursuant to defendant's by-laws was unreasonable, and that the allowance of $92.91 as the plaintiffs' share of profits upon the withdrawal of their stock was inadequate and inequitable, that it resulted in an unlawful forfeiture of plaintiffs'

right to a reasonable profit as shareholders, and that a reasonable allowance to plaintiffs would be "an amount equal to seven (7%) per cent of the payments made by plaintiffs on account of the maturity value of said stock, after averaging said payments over a period of six years and three months, the age of the stock in the twentieth series of the association." The prayer was that the court should determine what was a reasonable withdrawal value of plaintiffs' fifty-seven shares of stock on April 10, 1923, and direct the defendant to pay the difference between the reasonable value of the stock so determined and the amount with which plaintiffs have been credited upon the loan of $11,300 in the cancellation of the stock, and for such other and further relief as plaintiffs were entitled to receive.

The answer filed denied that on July 1, 1922, the date of the last annual fiscal report, plaintiffs' stock had made a net profit of nine hundred and thirty-one dollars and nine and a half cents ($931.09½), plus a proportionate share of undivided profits, and averred that such profit "was potential and contingent entirely upon the continued membership of plaintiffs in the defendant association until maturity, and the further continued success of the association in its loans until shares matured." It further averred that the allowance made of $92.91 as the share of profits due to plaintiffs was equitable and proper and made in accordance with the by-laws of the defendant association and the regulation of its board of directors. After hearing upon bill and answer, the learned chancellor dismissed the bill, and plaintiffs have appealed.

We are of opinion that plaintiffs were entitled to relief for the following reasons. Section 2 of the Act of 1879, P. L. 16, provides: "Stockholders (of building and loan associations) withdrawing voluntarily, shall receive such proportion of the profits of the association or such rate of interest as may be prescribed by the by-laws, any law or usage to the contrary nothwithstanding." The

prior Act of April 29, 1874, P. L. 73, section 37, provided that withdrawing stockholders should be entitled to receive in addition to the amount paid in by them, after the expiration of one year from the issuing of the series, "legal interest thereon." The later act permits an association whose profits are small to prescribe the proportion of the profits to be paid to withdrawing stockholders on a basis commensurate with its earnings. We are firmly of the opinion that the act now in force makes it mandatory for the association to fix the proportion of the profits or the rate of interest by a by-law and that it is not a compliance with the terms of the statute to delegate to the directors of the association to fix the proportion of the profits or the amount of interest which withdrawing stockholders shall receive. It may well be that the directors entrusted with the management of the affairs of the association are better qualified to deal with the subject than would be the general body of the stockholders. Doubtless it would be a much simpler matter for the board of directors to change, from time to time, the amount thus to be paid to withdrawing stockholders. But apparently the legislature thought that this matter was of sufficient importance to require that it be fixed by the by-laws themselves. We cannot escape the conclusion that this association did not have any by-law fixing the share of profits or the rate of interest to which plaintiffs, as withdrawing stockholders, were entitled.

This court held in Lepore v. Building & Loan Assn., 5 Pa. Superior Ct. 276, that in the absence of a by-law regulating this matter, it was not error to allow to a withdrawing stockholder interest at the lawful rate on the amount paid in by him. When plaintiffs paid off their loan and the defendant fixed the withdrawal value of their stock at $4,367.91, the amount paid in by them on their stock, plus the share of the profits to which they were entitled under the by-laws, they became simple creditors of the association subject to the laws regulating the right of stockholders after withdrawal. As such they

had the right to sue the association, as any other creditor might do: Lepore v. Building & Loan Assn., supra. But, as the defendant did not question the jurisdiction of the court upon the ground that the suit should have been brought at law, it waived the right of trial by jury, and the cause properly proceeded in equity (Act of June 7, 1907, P. L. 440). Nor are the plaintiffs estopped from questioning the validity of the by-laws. The question of the validity of the by-law fixing the percentage of the profits which a withdrawing stockholder might receive can be determined in a suit at law: Lynn v. Freemansburg B. & L. Assn., 117 Pa. 1. That proceeding was a scire facias sur mortgage against a borrowing stockholder. It was decided that a by-law which imposed a certain fine upon stockholders delinquent in payment of monthly dues was unreasonable, oppressive and void, and that a borrowing member of the association was not concluded by the payment of such illegal fines and was entitled to credit therefor as for a payment upon the debt and interest secured. Mr. Justice GREEN used this language: "The general rule that by-laws of corporations must be reasonable and must not be oppressive on peril of invalidity is such familiar doctrine that a citation of authorities in support of it is unnecessary." Judge ORLADY said for this court in Arbour v. Pittsburgh Produce Trade Assn., 44 Pa. Superior Ct. 240: "It is therefore a principle of the common law, running back so far that its origin cannot be found, that the by-laws of a corporation will be set aside by the judicial courts when deemed unreasonable." The present Chief Justice said in Spayd v. Ringing Rock Lodge, 270 Pa. 67: "We have often said that the by-laws, rules and regulations of these artificial bodies will be enforced only when they are reasonable," citing Lynn v. Freemansburg B. & L. Assn., supra. As the by-laws of the defendant association failed to prescribe the proportion of the profits or rate of interest to which plaintiffs were entitled as withdrawing stockholders, they were entitled to receive,

in addition to the amount paid in by them, less fines and other proper charges, interest at the lawful rate.

The decree is reversed and the bill reinstated and the record remitted to the court below, with direction to enter a decree not inconsistent with this opinion.